UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VAROUS SHARZARIAN,

      Plaintiff

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

Case No. 2:15-cv-00086 (KS)

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

On January 6, 2015, Plaintiff, Varous Shazarian ("Plaintiff"), filed a Complaint seeking judicial review of a denial of his application for Supplemental Security Income payments ("SSI"). (Complaint, ECF No. 1.) On August 12 and 17, 2015 and September 4, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Consents, ECF Nos. 21, 22.) On October 28, 2015, the parties filed a Joint Stipulation, whereby Plaintiff seeks an order reversing the Commissioner's decision and awarding SSI or, in the alternative, remanding the matter for further administrative proceedings; and

Defendant seeks an order affirming the Commissioner's decision or, in the alternative, remanding the matter for further administrative proceedings. (Joint Stip., ECF No. 24). The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 29, 2012, Plaintiff protectively filed an application for SSI under Title XI of the Social Security Act, alleging disability beginning April 3, 2009. (Administrative Record ("A.R.") 176-83.) Plaintiff's claim was denied initially on September 21, 2012. (A.R. 135-39.) On November 8, 2012, Plaintiff filed a request for hearing. (A.R. 140) On April 8, 2013, a hearing was held before Administrative Law Judge Michael J. Kopicki ("ALJ"). (A.R. 55-99.) At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Lynda Berkley, an impartial Vocational Expert ("VE"). (*Id*.) Plaintiff, born on April 6, 1961, was aged 52 at the time of the hearing.[1] In a written decision dated May 31, 2013, the ALJ denied SSI payments. (A.R. 12-27.) On November 3, 2014, the Appeals Council denied Plaintiff's request for review of that decision. (A.R. 1-6.) Plaintiff then timely filed this civil action.

## 2011 FINAL DECISION OF NON-DISABILITY

Before proceeding to the 5-step sequential analysis for determining whether Plaintiff was disabled, the ALJ noted that Plaintiff previously filed an application for SSI disability payments that was denied on April 29, 2011. (A.R. 12.) Plaintiff did not appeal the 2011 denial; therefore the decision became final and binding.

---

[1] Under Social Security regulations, Plaintiff would be classified as a person "closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d).

(*Id.*)   The ALJ noted that the prior final decision created a presumption of continuing non-disability, that could be rebutted by a showing of "changed circumstance," such as a "a change in the claimant's age category, . . . an increase in the severity of the [Plaintiff's] impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." (*Id*. at13.)   The ALJ found that the Plaintiff had rebutted the presumption of continuing non-disability "by alleging an increase in the severity of his impairments and by alleging the existence of an impairment(s) not previously considered." (*Id.*)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ then utilized the five-step sequential evaluation process to determine whether Plaintiff was disabled. 20 C.F.R. § 416.920. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 29, 2012. (A.R. 15.)   At step two, the ALJ found that Plaintiff "has the following severe combination of impairments": coronary artery disease; hypertension; degenerative disc disease of the lumbar spine with spondylosis; major depressive disorder; osteoarthritis of the left knee; migraine headaches; and degenerative change of the cervical spine. (*Id.*)

At the third step, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria contained in the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (A.R. 17.)   The ALJ also found that Plaintiff's "mental impairment does not meet or medically equal the criteria of Listing 12.04." (A.R. 18.)   The ALJ determined that in activities of daily living Plaintiff has mild restriction, he has no difficulties in social functioning, and  "moderate difficulties" with regard to concentration, persistence or pace. (*Id.*)

At step four, the ALJ determined that Plaintiff has the residual function capacity ("RFC")

> to perform medium work as defined in 20 CFR 416.967(c) except he is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday, and is limited to work consisting of simple, routine, repetitive tasks, meaning understanding, remembering, and carrying out simple, routine, repetitive tasks.

(A.R. 19.)

At the fifth step, the ALJ determined that Plaintiff is capable of performing past relevant work as a hybrid job of Cook Helper and Waiter Restaurant, and, in the alternative, the ALJ determined, after considering Plaintiff's age, education, work experience and RFC, that "there are other jobs that exist in significant numbers in the national economy that "Plaintiff also can perform."   (A.R. 25.)

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," he found "that the objective medical evidence and [Plaintiff's] treatment history contradict the alleged degree of impairment severity."  (A.R. 20.)  In making this finding, the ALJ noted that the record contained little objective evidence to support the alleged impairment severity.  Specifically, the ALJ pointed to updated cervical spine x-rays taken in 2012 and stated that "the findings from those x-rays do not corroborate the alleged degree of impairment severity."  (*Id.*)  The ALJ also noted that no treating

physician sought more detailed imaging studies or other treatment modalities, and the record lacked evidence of regular treatment with any kind of specialist regarding [Plaintiff's] physical health[.]"   (*Id.*)    In addition, the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects" of the symptoms not fully credible.  (*Id.*)

The ALJ concluded that Plaintiff "has not been under a 'disability', as defined in the Social Security Act, since March 29, 2012, the date the application was filed[.]"  (A.R. 26)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).   The Court will also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the

ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

Courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014).

## DISPUTED ISSUE

Plaintiff contends that the LAJ erred in determining Plaintiff's RFC, by adopting the 2011 finding of previous ALJ John D. Moreen's previous decision that

Plaintiff has the RFC to perform medium level work. (Joint Stip. at 3.)  In particular, Plaintiff argues that the ALJ's decision is "self-contradictory" insofar as the ALJ states that Plaintiff has a "*severe* combination of impairments" and at the same time adopted the 2011 findings of Judge Moreen, which found that Plaintiff's osteoarthritis of the left knee and migraine headaches were *not severe.*  (Joint Stip. 3-6; *see also* A.R. 15.)  Plaintiff further contends that the ALJ did not discuss the severity of the migraine headaches impairment and failed "to assess the credibility of Plaintiff's allegations regarding his subjective symptoms and functional imitations relating to his additional 'severe' medical impairments. (*Id.* at 4-5). On that basis, Plaintiff maintains that the decision should be reversed because the ALJ did not "adequately account for all of Plaintiff's 'severe' medical impairments." (*Id.* at 6.)

Defendant responds that the reference to these impairments as being *severe* is a mere "typographical error" that is harmless. (Joint Stip. at 14-15.)  Defendant also argues that the ALJ's reasoning is legally sound when considered in the context of the ALJ's overall analysis, which found that Plaintiff has the RFC to perform medium work and based on that RFC, is capable of performing past relevant work as a Cook Helper or other jobs of medium exertion level that are widely available in the national economy.  (Joint Stip. at 6-13.)

Plaintiff seeks a reversal of the adverse decision and remand for an award of benefits, or in the alternative, remand for further proceedings.  (Joint Stip. at 16.)  Defendant maintains that the ALJ's decision should be affirmed, or if any error is found, requests remand for further proceedings.  (*Id.*)

//

//

//

7

## DISCUSSION

### a.  The ALJ's Analysis of Plaintiff's "Severe"  and "Non-Severe" Impairments

The ALJ noted Plaintiff's previously filed application for disability payments and the unfavorable hearing decision issued by ALJ Judge Moreen on April 29, 2011 (A.R. 12.)  With respect to that decision, the ALJ found "no reason under the regulations or rulings to reopen the final decision from the prior [ALJ]." (*Id*.) However, the ALJ did find that Plaintiff had rebutted the presumption of continuing non-disability by showing changed circumstances by alleging an increase in the severity of his impairments and by alleging the existence of impairments not previously considered. (*Id*.)    Nonetheless, because the ALJ found that Plaintiff "failed to produce any new and material evidence relating to *most* of the findings of [Judge Moreen]," the ALJ adopted *most* of the finding of the previous ALJ. (*Id*. at 13 (italics added).)

In his summary paragraph of Plaintiff's impairments, the ALJ determined that Plaintiff:

> has the following severe combination of impairments: coronary artery disease []; hypertension []; degenerative disc disease of the lumbar spine with spondylosis []; major depressive disorder []; osteoarthritis of the left knee []; migraine headaches []; and degenerative change of the cervical spine [].

(A.R. at 15 (internal citations to exhibits omitted).)   In the 2011 unfavorable decision, Judge Moreen found Plaintiff has "medically determinable impairments consisting of coronary artery disease, hypertension, degenerative disc disease of the

lumbar spine with spondylosis and major depressive disorder[.]" (*Id.*) The ALJ also noted that Judge Moreen found Plaintiff had osteoarthritis of the left knee and migraine headaches, but Judge Moreen concluded these impairments were not severe. (*Id.*)   The ALJ adopted these findings of Judge Moreen "but add[ed] the impairment of degenerative change of the cervical spine, which is non-severe given the x-ray findings and the lack of chronic and significant clinical findings." (*Id.*) The ALJ then concluded that Plaintiff "has a severe combination of impairments consisting of some severe and some non-severe impairments." (*Id.*)

Plaintiff argues that because of the inconsistency in the ALJ's finding that Plaintiff's osteoarthritis of the left knee; migraine headaches; and degenerative change of the cervical spine were both "severe" impairments and "non-severe" impairments, the ALJ did not properly assess all of Plaintiff's severe medical impairments.   Defendant concedes that the ALJ identified migraine headaches, degenerative changes of the cervical spine and osteoarthritis of the left knee as being "severe" medical impairments in his summary paragraph of step two of the sequential analysis, and later identifies these same impairments as non-severe. (Joint Stip. at 6.)   But Defendant argues that this contradiction is "harmless typographical error." (*Id.*)

For the reasons discussed below, based on a review of the record as a whole, the Court finds the inconsistency in the ALJ's findings is harmless and does not warrant remand for further proceedings.

**b.  The ALJ's RFC Determination is Supported by Substantial Evidence**

A court reviewing the Commissioner's final decision for substantial evidence must consider the record as a whole. *Orn*, 495 F.3d at 630.  Unless it contains legal

error or is not supported by substantial evidence, the agency's disability determination should be upheld. *Id.*

Here, the ALJ's determined that Plaintiff is capable of performing medium work as defined in 20 CFR 416.967(c) except he is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday, and is limited to work consisting of simple, routine, repetitive tasks, meaning understanding, remembering, and carrying out simple, routine, repetitive tasks. (A.R. 19.)    Based on this RFC, the ALJ concluded at step five that Plaintiff is capable of performing past relevant work as a hybrid job of Cook Helper and Waiter Restaurant, and, in the alternative, after hearing the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, that "there are other jobs that exist in significant numbers in the national economy that "Plaintiff also can perform."   (A.R. 25.)

The RFC determination is supported by substantial evidence in the ALJ's detailed analysis of the medical evidence and Plaintiff's testimony.  Even though the ALJ's  written decision appears to be contradictory as to Plaintiff's "severe" and "non-severe" medical impairments, the ALJ makes clear that in assessing Plaintiff's impairments,  his analysis was based on a "severe combination of impairments consisting of *some severe and some non-severe* impairments."  (A.R. 15 (italics added).)   With respect to Plaintiff's additional alleged impairments of osteoarthritis of the left knee, migraine headaches, and degenerative change of the cervical spine, as to each condition, the ALJ provided specific reasons based on the medical record for why he found these new impairments to be non-severe.

//

The ALJ observed that generally, he found little new and material evidence of medical treatment as to Plaintiff's conditions since the 2011 proceedings before Judge Moreen. (*Id*.) Indeed, at the hearing the ALJ mentioned to Plaintiff's attorney: "I don't see much in the ways of treatment. . . . I don't see actual progress notes or treatment." (A.R. 59.)  To which Plaintiff's counsel responded "Your honor, I have requested progress notes over and over again from both the psychiatrist, Dr. Simonian as well as Dr. Bazel and every time I made a request, I was provided with medical reports. And I was told I was given the entire file[.]"  (A.R. 59-60.)

As to Plaintiff's osteoarthritis of the left knee, the ALJ noted that x-rays of the left knee showed mild osteoarthritis as the time of Judge Moreen's 2011 decision, and other than 2012 x-rays of the cervical spine, Plaintiff's current medical record "contain[ed] no new and material evidence regarding the medically determinable impairments previously found by [Judge Moreen]." (*Id* at 16.)  The ALJ added the impairment of degenerative change of the cervical spine, but concluded this was non-severe based on x-rays in mid-February 2012 that showed moderate narrowing of the disc interspace at the C5-C6 level with minor positional changes consistent with muscle spasm. (*Id.* at 16.)  With respect to both Plaintiff's left knee and lumbar spine impairments, the ALJ found "[t]he updated x-rays of the lumbar spine and left knee reveal similar findings as previous ex-rays and do not document any material change in those conditions." (*Id.* at 17.)

The ALJ also found the record contained "no objective evidence of any chronic and significant problems regarding mobility, including range of motion, the ability to use the hands, and the ability to ambulate." (*Id.* at 18.)  Plaintiff argues that the ALJ did not discuss the severity of the migraine headaches.  (Joint Stip. at 4.) But this is not the case.  The ALJ specifically noted  that the record mentioned migraine

1    headaches "only in passing with no specific treatment or work-up by a specialist for
2    them." (*Id.*)

3

4    With respect to Plaintiff's mental impairments, the AJL observed that the
5    objective medical evidence indicated that Plaintiff was rarely seen by his treating
6    psychiatrist, Dr. Simonian, except to adjust Plaintiff's medications. (*Id.* at 16.)[2]  The
7    ALJ also found that the results of Dr. Simonian's mental status examination did not
8    support a disabling mental impairment.  The ALJ found Dr. Simonian's 2011
9    description of Plaintiff's mental status examination to be "vague and cursory." (*Id.*)
10   While Dr. Simonian indicated that Plaintiff "manifested poor concentration and poor
11   recent memory," he also stated that [o]ther aspects of [Plaintiff's] mental status
12   evaluation were within normal limits." (A.R. at  311.)

13

14   At the hearing, Plaintiff frequently mentioned dizziness. (*See e.g.,* A.R. 70, 78-
15   79).  However, the ALJ found "no objective medical evidence to establish dizziness
16   or vertigo as medically determinable," and found no evidence that Plaintiff was ever
17   referred to a specialist for such condition. (A.R. 17.)  In addition, the ALJ observed
18   that the record contained no objective evidence based on imaging studies, clinical
19   examinations, or electrodiagnostic testing to establish cervical radiculopathy, lumbar
20   radiculopathy, peripheral neuropathy, or numbness of the fingers as medically
21   determinable." (*Id.*)  Similarly, the ALJ found no objective medical evidence to
22   establish frequent urination, sleep disorder, or generalized anxiety disorder as
23   medically determinable. (*Id.*)

24

25   In light of the record as a whole, and, in particular , the absence of additional
26   new objective medical evidence –other than the 2012 x-rays of the cervical spine–

27   _____
28   [2] In July 2011, Dr. Simonian indicated he had only seen Plaintiff 3 times since November 2009. (A.R. 16.)  Between
     November 2009 and February 2012, Dr. Simonian only saw Plaintiff 5 times. (*Id.*)  In January 2013, Dr. Simonian
     indicated that he had not seen Plaintiff since July 2, 2012. (*Id.*)

since the 2011 adverse decision, the Court finds that the ALJ's determination that Plaintiff's impairments of osteoarthritis of the left knee, migraine headaches, and degenerative change of the cervical spine, remained non-severe is supported by substantial evidence.

Even if the ALJ's reference in the summary paragraph to a "severe combination of impairments" was a typographical error, in light of the substantial evidence supporting the ALJ's specific determinations that Plaintiff's newly alleged impairments, i.e., osteoarthritis of the left knee, migraine headaches, and degenerative change of the cervical spine, were non-severe, it is clear from the record that any such error was harmless as it was "inconsequential to the ultimate nondisability determination." *Robbins*, 466 F.3d at 885.

Accordingly, the Court finds the ALJ did not err in assessing Plaintiff's RFC insofar as he determined the newly alleged impairments were non-severe.

### c. The ALJ Did Not Err in Discounting Plaintiff's and His Wife's Credibility

Plaintiff also contends that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's credibility and germane reasons for rejecting that of his wife, with respect to Plaintiff's subjective symptoms and functional limitations relating to his additional impairments. (Joint Stip. at 5.) The Court disagrees.

Where there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281(9th Cir.

13

1996); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude that adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 2015 U.S. APP. LEXIS 13560, *14 (9th Cir. Aug. 4, 2015) (*citing Bunnell v. Sullivan* (947 F.3d 341, 345-46 (9th Cir. 1991)).

In this case, the ALJ found the testimony of Plaintiff and his wife not entirely credible for several reasons.  (A.R. 18.)  First, as to Plaintiff's mental impairment, the ALJ did not find Plaintiff's allegations of severe depression entirely credible "in light of [Plaintiff's] sporadic and conservative history of mental health treatment and the lack of objective medical evidence." (*Id.*)  The ALJ noted that the records from Plaintiff's treating psychiatrist, Dr. Simonian, indicated that he rarely saw Plaintiff between 2009 and 2013, and when he did it was primarily to adjust his medications.  (*Id.* at 16.)  Plaintiff admitted that he was not seeing a counselor or therapist and had never been hospitalized for depression.  (*Id.* at 70-71.)

In contrast to the ALJ's skepticism about the severity of Plaintiff's mental impairment, at the hearing, Plaintiff showed the ALJ "a whole bag" of prescription medications he was taking, including Ambien for sleep, Paxil and Remeron for depression. (*Id.* at 72-75.)   But the evidence of Plaintiff's medications does not, of itself, require reversal of the ALJ's decision, particularly given the conceded absence of treating records from Plaintiff's treating physicians.   Even where evidence is susceptible to more than one rational interpretation, the Court "will uphold the ALJ's finding if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1110.

Second, with respect to Plaintiff's physical impairments, the ALJ concluded that the objective medical evidence and Plaintiff's treatment history contradicted the alleged degree of impairment severity. (*Id.* at 20.) In particular, the ALJ pointed to the fact that while Plaintiff alleged that he had difficulty with or needed assistance with daily activities, the medical evidence did not support this degree of limitation where Plaintiff has very little treatment and what treatment he did receive was not "of an amount, frequency, or intensity consistent with the alleged degree of impairment. (*Id.*) There was little in the way of treatment notes beyond what was provided in connection with the 2011 decision by Judge Moreen. (*Id.*) Even the updated 2012 cervical spine x-rays, "did not corroborate the alleged degree of impairment severity." (*Id.*)

More importantly, despite Plaintiff's allegations that he could do little more than watch TV and walk short distances in his apartment (*see* A.R.. 222-29), the ALJ noted that

> no treating physician concluded that more detailed imaging studies, such as Magnetic Resonance Imaging (MRI) or a Computerized Tomography (CT) scan, were necessary or that electrodiagnostic studies such as an electromyography (EMG) or nerve conduction studies (NCS) were necessary. I find little to nothing to suggest that the claimant is under any regular treatment with anyone for his physical health given the lack of progress notes from Dr. Bazel or any other physician . . . The Record also lacks evidence of regular treatment with any kind of specialist regarding the [Plaintiff's] health, such as a cardiologist, orthopedist, urologist, etc. The current claim file contains no independent documentation to corroborate the [Plaintiff's] testimony that he was told he needs surgery on his neck or left knee, and the

[Plaintiff] indicated in his testimony that he was given this medical advice years ago. . . Other than medications, I see no documentary evidence to indicate that the claimant even gets conservative treatment for his physical health, such as physical therapy, a TENS unit, a back brace, a knee brace, injections, etc. and what the [Plaintiff's] response was to those treatment modalities. "

(A.R. 20.) Finally, the ALJ stated that although Plaintiff brought a cane with him to the hearing and testified that he had been using a cane for years due to his left knee, this testimony was contradicted by Plaintiff's prior report and the current medical evidence did not substantiate the need for a cane. (*Id.* at 21.)

Plaintiff's wife did not testify at the hearing,  but provided a third party Function Report.  (A.R. at 201-08.)   The ALJ gave the wife's third party report little weight because it essentially repeated the Plaintiff's subjective complaints, which the ALJ did not find entirely credible.  (*Id.* at 21.)   The ALJ also noted that to the extent the wife reported on her own observations that Plaintiff could do very little in the way of daily activity due to his impairments, "those observations are not necessarily reflective of the [Plaintiff's] maximum residual functional capacity." (*Id.*)  Further, the ALJ noted that the wife's observations were contradicted by the objective medical evidence and Plaintiff's treatment history. (*Id.* at 22.) Finally, the ALJ pointed out that the wife had a financial interest in the outcome of the proceedings. (*Id.* at 22.)  These are all germane reasons for discounting the evidence provided in the wife's third party report.  *See Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1053-54 (9th Cir. 2006).

Plaintiff argues that if the ALJ took issue with the wife's third party report, he should have called her to testify as a witness at the hearing.  (Joint Stip. at 6.)  The

ALJ had no such obligation.  Indeed, the ALJ commented that Plaintiff's wife "was *not offered* as a witness at the hearing," which suggests that Plaintiff, who was represented by counsel, could readily have offered his wife as a witness at the hearing.   (A.R. at 21 (italics added).)   At all times, a claimant bears the burden to establish his or her entitlement to disability insurance benefits.  *Parr v. Astrue*, 481 F.3d 742,746 (9th Cir. 2007) (claimant bears the burden of proving steps one through four, once a prima facie case is established, the burden shifts to the Commissioner at the fifth step to show that the claimant may perform other gainful activity).

On this record, the Court finds that the ALJ's detailed analysis, closely tied to the objective medical evidence, provides clear and convincing reasons for discounting Plaintiff's credibility and germane reasons for rejecting the opinions Plaintiff's wife provided in her third party report.  Accordingly, the ALJ did not err in finding Plaintiff and his wife not entirely credible.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

//

//

//

17

1          **LET JUDGMENT BE ENTERED ACCORDINGLY.**

2

3   DATED: February 2, 2016

4                 _____

5                         KAREN L. STEVENSON
              UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28